## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| _____ | : | |
| **AUTOMATIC SYSTEMS, INC.,** | : | **Case No. _____** |
| **a Missouri corporation,** | : | **Hon. _____** |
| | : | **Magistrate _____** |
| **Plaintiff,** | : | |
| **vs.** | : | |
| | : | |
| **AMERICAN ARBITRATION** | : | |
| **ASSOCIATION, INC., a New York** | : | |
| **corporation, ELITE AUTOMATION,** | : | |
| **LLC, a Utah limited liability company,** | : | |
| **ELITE AUTOMATION HOLDINGS,** | : | |
| **LLC, a Utah limited liability company,** | : | |
| **and BIG-D HEAVY INDUSTRIAL,** | : | |
| **LLC, a Utah limited liability company,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | / | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

For its Complaint for declaratory and injunctive relief, Plaintiff Automatic
Systems, Inc. says:

## PARTIES

1.     Plaintiff, **Automatic Systems, Inc. ("ASI")**, is a Missouri Corporation
for profit that does business in Wayne County, including work at the General Motors
Factory Zero in Detroit, Michigan, which is a subject of this dispute.

2.     Upon information and belief, Defendant, **American Arbitration Association, Inc. ("AAA")**, is a New York corporation for profit that does business in Wayne County, with a resident agent and registered address of CSC-Lawyers Incorporating Service, 3410 Belle Chase Way, Suite 600, Lansing, Michigan, 48911, and the AAA is administering the arbitration between ASI, Elite, and Big-D which is a subject of this dispute (AAA Case No. 01-25-0003-7323, the "Arbitration").

3.     Upon information and belief, Defendant **Elite Automation, LLC ("Elite Automation")** is a Utah limited liability company with offices located at 175 N 1800 W, Suite 107, Lindon, Utah, 84042 and which conducts business in Wayne County, including work at the General Motors Factory Zero in Detroit, Michigan, which is a subject of this dispute.

4.     Upon information and belief, Defendant **Elite Automation Holdings, LLC ("Elite Holdings")** is a Utah limited liability company with offices located at 175 N 1800 W, Suite 107, Lindon, Utah, 84042 and which conducts business in Wayne County, including work at the General Motors Factory Zero in Detroit, Michigan, which is a subject of this dispute.

5.     Upon information and belief, Elite Automation and Elite Holdings conduct business under the name "Elite Automation & Robotics", and Elite Holdings and Elite Automation are collectively referred to herein as **"Elite"**.

6.      Upon information and belief, Defendant **Big-D Heavy Industrial, LLC ("Big-D")** is a Utah limited liability company that does business in Wayne County, including work at the General Motors Factory Zero in Detroit, Michigan, which is a subject of this dispute

7.      ASI, Elite Automation, Elite Holdings, and Big-D are all parties to the Arbitration being administered by the AAA.

8.      This litigation involves real property located in the City of Detroit, County of Wayne, State of Michigan (commonly known as the General Motors Factory Zero at 2500 East Grand Boulevard, Detroit, Michigan, 48211, the "Project" and the "Property").

## JURISDICTION AND VENUE

9.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of ciitzendhip between the parties, and th amount in controversy exceeds $75,000.00, exclusive of interest, fees, and costs.

10.     Venue is proper in this Court, as the location of Project, the Property, the Arbitration, and the circumstances giving rise to this Complaint are in the City of Detroit, County of Wayne, Michigan.

11.     Through this lawsuit, Plaintiff ASI seeks a declaratory judgment pursuant to the Declaratory Judgment Act (28 U.S.C. § 2201) and FED.R.CIV.P. 57, and this Court has jurisdiction to provide such relief.

## BACKGROUND RE: THE CONTRACT BETWEEN ASI AND ELITE

12.     On or about June 20, 2024, ASI entered into a written subcontract with Elite Automation and Elite Holdings (individually and collectively doing business as Elite Automation & Robotics, "Elite") for Elite's performance of a defined scope of work at the "GM FZ New ASRS Project" (the "Project") upon the terms of the "ASI Standard Subcontract Agreement" (the "Subcontract", not including its voluminous attachments, **Ex. 1**) and the "Automatic Systems Incorporated Standard Subcontract General Conditions", dated March 1993 (the "General Conditions", **Ex. 2**, and collectively with the Subcontract, the "Contract Documents").

13.     By signing the Subcontract, Elite agreed to be bound by the terms and conditions of the Contract Documents.  Big-D is not a party to the Subcontract.

14.     Upon information and belief, on or about July 29, 2024, Elite entered into a written purchase order with Big-D to be a sub-subcontractor to Elite on the Project (the "Purchase Order", which is already in the possession of the Parties). ASI is not a party to the Purchase Order.

15.     In or around early June 2025, ASI, Elite, and others observed excessive deflection with elements of Elite's work which work was deficient withing the meaning of the Subcontract and the other Contract Documents; by way of example but without limitation, Elite's deficient work included that the Mezzanines and ASRS Steel Rack System were improperly designed and had experienced excessive

4

deflection and there was improper deflection in the racks which require structural steel reinforcements to be added in the field.

16.     Elite admitted that the deficient work was due to improper engineering by one or more of Elite's sub-subcontractors.  For example, but without limitation, by a letter dated June 20, 2025, Elite notified its sub-subcontractor Big-D that:

> *"As you are aware, Elite retained Big-D to lead the structural design efforts for this project.  In turn, Big-D subcontracted Millcreek Engineering to confirm compliance with required deflection standards and to ensure the design met all applicable safety criteria.*
>
> ***
>
> *Elite holds Big-D and its subcontractor responsible for the resulting deficiencies, and we will be filing a claim to recover associated damages.  This includes, but is not limited to, engineering corrections, potential structural member replacement, project delays, extra engineering labor and all other losses."*

17.     Also on June 20, 2025, Elite sent a letter to ASI representing:

> *"We understand the seriousness of your concerns and appreciate your direct communications.*
>
> ***
>
> *[I]t now appears that the original specifications were not properly applied or followed by Big-D or their engineering subcontractor (even the bare minimum L/480 loading).  Their claim that the specifications "changed" is not supported by the record.  Elite has documentation confirming that no changes were made to the relevant standards.  Therefore, we believe the responsibility for this situation lies solely with Big-D and Millcreek."*

18.     ASI gave Elite notice and an opportunity to cure its deficient work, but Elite was unable or unwilling to effectuate repairs.

19.     On or about July 21, 2025, Elite represented to ASI that Elite had made the "decision to **cease all work** on the Factory Zero project **effective immediately**". (*Emphasis in original*.)

20.     ASI had no alternative but to mitigate its damages and require that Elite's deficient work to be demolished, corrected, reconstructed, and completed by replacement contractors.

21.     ASI has already informed Elite that it has already incurred at least $3.85 million in costs for remedial measures (which amounts continue to increase).

## THE UNDERLYING *ELITE vs. ASI* ARBITRATION

22.     Per Section 15.02 of the General Conditions of the ASI-Elite Subcontract (**Ex. 2**):

> [A]ll claims, disputes, disagreements or other matters in question between Contractor and Subcontractor arising out of, or related to, the Work, the Project, the Subcontract or any alleged breach thereof, ***shall be decided (if not resolved by negotiation between the parties), by arbitration*** in the manner provided in this Article 15. *(Emphasis added.)*

23.     Per Section 15.04 of the General Conditions of the ASI-Elite Subcontract (**Ex. 2**):

> ***[A]ny arbitration between Contractor and Subcontractor shall be conducted in accordance with the Construction Industry Rules of the American Arbitration Association then in effect, and such arbitration proceedings shall be administered by and conducted at the United States office of the American Arbitration Association located***

6

> ***closest to the site of the Project***. ***Upon the request of*** **and**
> ***at the sole discretion of*** **the Contractor [ASI], any**
> **arbitration between Contractor and the Subcontractor**
> **may include, by consolidation, joinder** or other
> appropriate motion, any additional person or entity not a
> party to the Subcontract, including the Owner,
> Construction Manager, General Contractor, or any
> engineer, subcontractor or other person or entity retained
> to perform work on the Project, provided that such person
> or entity is substantially involved in a common question of
> fact or law arising out of the same transaction or relating
> to the same subject matter involved in the arbitration.
> *(Emphasis added.)*

24.     On August 26, 2025, Elite filed a Demand for Arbitration against ASI, which Arbitration is being administered by Defendant AAA under its Construction Industry Rules (the "AAA Rules", **Ex. 3**).  The AAA assigned its Case No. 01-25-0004-0815 to the *Elite vs. ASI* Arbitration.

25.     On September 17, 2025, ASI filed its Answering Statement and Counterclaim against Elite in the *Elite vs. ASI* Arbitration seeking damages in excess of $4 million.

26.     Under Rules R-1(c) and L-1 of the AAA Rules, because the amount at issue in the *Elite vs. ASI* Arbitration is in excess of $1 million the AAA's Procedures for Large, Complex Construction Disputes shall apply.

27.     Under Rule L-3(a) of the AAA Rules, because the amount at issue in the *Elite vs. ASI* Arbitration is in excess of $3 million, a panel of "three arbitrators shall hear and determine the case".  See also paragraph 6 of the September 18, 2025

Administrative Conference Summary from the AAA (**Ex. 4**).

28.     Further, ASI and Elite agreed that the arbitrator candidates for the three-arbitrator panel need to be experienced Michigan construction lawyers.

29.     Moreover, under Rules R-24, R-25, and L-4(c) through (h), ASI is entitled to conduct pre-arbitration discovery including the exchange of project documents and the deposition of witnesses.  Importantly, there is no fixed limit to the discovery that may be undertaken by ASI and Elite.

30.     Per Subcontract General Conditions Section 15.04 and AAA Rule R-13, the Arbitration hearings are to be held at the office of the AAA "located closest to the site of the Project" (*i.e.*, the Project is located in Detroit, Michigan), or such other location near the Project site which is mutually agreeable to the parties and the arbitrator.

31.     Under AAA Rules R-23(b) and R-43, the timing of the Arbitration hearing is to be "appropriate to achieve a fair, efficient, and economical resolution of the dispute" taking into consideration appropriate time to conduct discovery and to comply with the other scheduling requirements of the parties and the arbitrators. Importantly, under AAA Rules R-23(b), R-31, R-33, R-34, and R-43, there is no fixed time by which the arbitration hearings must be held.

32.     This matter involves (i) contractual claims, (ii) Elite's claim of lien recorded against the Property, and (iii) ASI's statutory lien bond; as such, contractual

matters herein are governed by Missouri law (per General Conditions Section 20.02, **Ex. 2**) and lien/lien bond issues are governed by Michigan's Construction Lien Act (MCL §§ 570.1101 *et seq*.).

## THE UNDERLYING *ELITE vs. BIG-D* ARBITRATION

33.     Upon information and belief, on August 6, 2025, Big-D filed a Demand for Arbitration against Elite, which Arbitration is also being administered by Defendant AAA under its Construction Industry Rules.  The AAA assigned its Case No. 01-25-0003-7323 to the *Big-D vs. Elite* Arbitration.

34.     Upon information and belief, on September 16, 2025, Elite filed its Answering Statement and Counterclaim against Big-D in the *Big-D vs. Elite* Arbitration seeking damages in excess of $3 million.

35.     On September 17, 2025, Elite made a motion in the AAA for the administrative appointment of a "Rule 7 Arbitrator" for the purpose of consolidation and joinder of the *Elite vs. ASI* Arbitration and the *Big-D vs. Elite* Arbitration.

36.     However, the ASI-Elite Subcontract General Conditions Section 15.04 provides that consolidation or joinder of the *ASI-Elite* Arbitration with any other arbitration may only be done "***upon the request of and at the sole discretion of [ASI]***".  ASI neither requested nor granted its approval to consolidate or join the two arbitrations, and both ASI and Big-D opposed Elite's motion for consolidation or joinder.  Specifically:

9

a.  On October 9, 2025, ASI filed a response with the AAA stating, "ASI expressly **does not** consent to waive any of its rights under its arbitration provisions with Elite or the AAA Construction Industry Rules" and that ASI would only consent to a consolidated arbitration "on the condition that none of the limitations of the Big-D/Elite arbitration provisions are imposed upon ASI" (*emphasis in original*).

b.  And on October 22, 2025, ASI filed a response with the AAA stating, "in light of Elite's newly filed Rule 7 Argument, and it appearing that Elite is purposefully misconstruing ASI's limited consent to consolidation/joinder, ASI hereby **withdraws** its consent unless it can be absolutely assured that its arbitration rights under the ASI-Elite Subcontract and the unfettered Construction Industry Rules of the American Arbitration Association will in no way be diminished, amended, or negated by said consolidation/joinder. ASI expressly **does not** consent to waive any of its rights under its arbitration provisions with Elite or under the AAA Rules" (*emphasis in original*).

37.    Nevertheless, on October 23, 2025, the AAA's appointed Rule 7 Arbitrator granted Elite's motion and issued an order for "consolidation" with no assurance that ASI's Subcontract rights would be protected. The Rule 7 Arbitrator further ordered that the *Elite vs. ASI* Arbitration be consolidated into the *Big-D vs.*

*Elite* Arbitration under the AAA Case No. 01-25-0003-7323 (**Ex. 5**).

38.     Thus, on October 30, 2025, the AAA sent correspondence requesting the parties advise the AAA as to whether there was agreement on the appointment of a three-arbitrator panel, and in response, Big-D argued that its Purchase Order with Elite requires that the Arbitration follow the below protocols (all of which are in direct contravention of ASI's rights under its Subcontract with Elite and in the *Elite vs. ASI* Arbitration):

   a.  Big-D argues that the Arbitration is to be administered in California and held in Utah.

   b.  Big-D argues that Utah law applies to the dispute.

   c.  Big-D argues that the Arbitration is to be heard by a single arbitrator; specifically, a Utah lawyer named David Slaughter.

   d.  Big-D argues that the arbitration hearings must be held within 120 days after the filing of its Arbitration Demand (August 6, 2025) which means no later than December 4, 2025.

   e.  Of the foregoing window for the Arbitration hearings, Big-D argues that discovery in the Arbitration is to be limited to 90 days and only two depositions per party.

39.     ASI is not a party to the Elite-Big-D Purchase Order, and nothing in the Elite-Big-D Purchase Order can diminish, amend, or negate ASI's rights under the

ASI-Elite Subcontract or under the AAA Rules.

40. Therefore, on November 4, 2025, ASI filed its motion for reconsideration and correction of the AAA's October 23rd Order for Consolidation. As part of its November 4, 2025 motion, ASI stated, "ASI hereby reiterates that it **withdraws** its consent to consolidation/joinder unless ASI can be absolutely assured that its arbitration rights under the ASI-Elite Subcontract and the unfettered Construction Industry Rules of the American Arbitration Association will in no way be diminished, amended, or negated by said consolidation/joinder. ASI expressly **does not** consent to waive any of its rights under its arbitration provisions with Elite or under the AAA Rules, and ASI requests that the AAA / Rule 7 Arbitrator clarify and/or reconsider the Order for Consolidation" (*emphasis in original*). Subsequently, Big-D concurred in ASI's motion for reconsideration.

41. ASI was clear in its directives to the AAA and its Rule 7 Arbitrator, ASI was clear that it did not consent to waive any of its rights under the ASI-Elite Subcontract, and ASI gave the Rule 7 Arbitrator every opportunity to clarify, reconsider, and correct the erroneous October 23, 2025 Order.

42. However, on November 26, 2025, the AAA's Rule 7 Arbitrator issued an order denying ASI's motion for reconsideration and imposing a single merits arbitrator on the proceedings (in direct contravention of the ASI-Elite Subcontract arbitraiton provision, **Ex. 6**).

12

## COUNT I – DECLARATORY RELIEF

43.     ASI incorporates by reference each and every previous allegation of this Complaint as though fully set forth herein.

44.     The arbitration rules and rights to which ASI is entitled under the arbitration agreement in its Subcontract with Elite (and the unfettered Construction Industry Rules of the AAA) are irreconcilably in conflict with the arbitration rules and rights Big-D asserts under its Purchase Agreement with Elite. And by the orders of October 23, 2025 and November 26, 2025 of its Rule 7 Arbitrator (**Ex.'s 5 and 6**), the AAA is illegally amending, diminishing, and negating the express written terms of ASI's arbitration agreement with Elite. As such, there is an actual controversy within this Court's jurisdiction.

45.     Under FED.R.CIV.P. 57, in a case of actual controversy within its jurisdiction, this Court may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

46.     There is an actual controversy within this Court's jurisdiction regarding whether the AAA's Rule 7 Arbitrator may deprive ASI of its arbitration rights under the ASI-Elite Subcontract or under the AAA Rules by imposing the arbitration rights claimed by Big-D under the Elite-Big-D Purchase Order and as the Purchase Order amends the AAA Rules.

47.     Section 4 of the Federal Arbitration Act permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  This Court has jurisdiction to apply and enforce the terms of the Federal Arbitration Act.

48.     Pursuant to 9 U.S.C. § 4, Plaintiff requests that this Honorable Court issue an order directing the AAA to administer the ASI-Elite Arbitration in accordance with the ASI-Elite Subcontract by appointing a three arbitrator panel as required by the AAA Construction Industry Arbitration Rules (and by otherwise adhering to the ASI-Elite arbitration agreement and the unfettered Construction Industry Rules of the AAA).

49.     Further, under Missouri law, an arbitration agreement **must** be enforced in accordance with its terms.

> [An arbitration] provision is treated like any other contract and is enforced according to its terms.  *See Concepcion,* 131 S.Ct. at 1745.  The terms of a contract are to be read "as a whole to determine the intention of the parties," giving the terms "their plain, ordinary, and usual meaning." *Dunn Indus. Grp., Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003).
>
> *State ex re. Hewitt v. Kerr*, 461 S.W.3d 798, 808 (2015).

50.     As held by the Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 1745-1746 (2011):

We have described this provision as … the "fundamental principle that arbitration is a matter of contract," *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 67, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010).  In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and enforce them according to their terms, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

51.    Moreover, the Missouri Supreme Court has held:

Arbitration is solely a creature of contract and, thus, a party cannot be required to submit to arbitration any dispute which he or she has not agreed so to submit." *Salsman v. Leonard*, 568 S.W.3d 434, 441 (Mo. App. 2019) (internal quotation omitted). "[A]rbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses." *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. banc 2012)

*Keeling v. Preferred Poultry Supply, LLC*, 621 S.W.3d 672, 677 (2021).

52.    ASI never agreed to the limits in the arbitration agreement between Elite and Big-D in the Purchse Order, and ASI's consent is an express contractual condition of the joinder of the ASI-Elite Arbitration with any other matter. Specifically, ASI-Elite Subcontract Section 15.04 provides:

***Upon the request of** and **at the sole discretion of the Contractor [ASI], any arbitration between Contractor and the Subcontractor **may** include, by consolidation, joinder** or other appropriate motion, any additional person or entity not a party to the Subcontract, including the Owner, Construction Manager, General Contractor, or any engineer, subcontractor or other person or entity retained to perform work on the Project,*

15

> provided that such person or entity is substantially involved in a common question of fact or law arising out of the same transaction or relating to the same subject matter involved in the arbitration. *(Emphasis added.)*

53.     Under Missouri law, the foregoing provision must be enforced according to its plain terms; to wit, ASI expressly withheld its consent for joinder in this matter unless it could be assured that the arbitration limits of the Elite-Big-D arbitration agreement would not be imposed upon ASI.  No such assurance was granted, and ASI withheld its consent.

54.     ASI is entitled to the contractual rights of the arbitration provision in its Subcontract with Elite (and upon information and belief, Big-D is also entitled to its separate rights of the arbitration provision in its Purchase Order with Elite).  The provisions of the two separate contracts are irreconcilably inconsistent, and the AAA and its Rule 7 Arbitrator failed and refused to rectify this error when the Rule 7 Arbitrator denied reconsideration and correction of the Order for Consolidation.

55.     The plain terms of the ASI-Elite Subcontract contain none of the limiting provisions set forth in the Elite/Big-D Purchase Order and directly contradict the October 23, 2025 and November 26, 2025 orders of the AAA's Rule 7 Arbitrator.  Any action by the AAA to diminish, amend, or negate ASI's rights under its contractual arbitration agreement with Elite, and/or to import the arbitration limitations of the Elite-Big-D Purchase Order into the ASI-Elite Arbitration, is a violation of Missouri law and a fundamental due process violation.

16

56.     Stated differently, the AAA's Rule 7 Arbitrator acted outside of his authority when his October 23, 2025 and November 26, 2025 orders diminished, amended, and negated terms of the ASI-Elite arbitration agreement.

57.     The AAA importing the restrictive arbitration terms of the Big-D-Elite arbitration agreement (*i.e.*, (i) consolidating the two arbitrations when ASI neither sought consolidation nor gave its consent to consolidation and (ii) mandating a single arbitrator vs. a three-arbitrator panel) are *ultra vires* acts by the AAA and an illegal changing of the terms of the ASI-Elite arbitration agreement.

58.     ASI seeks a declaratory judgment that the arbitration rights of the ASI-Elite Subcontract, and the unfettered AAA Rules, apply to the *Elite vs. ASI* Arbitration, and that the countervailing arbitration rights claimed by Big-D under the Elite-Big-D Purchase Order do not apply to the *Elite vs. ASI* Arbitration. Specifically, that in the *Elite vs. ASI* Arbitration:

    a.  The arbitration provisions at Article 15 of the General Conditions of the Subcontract apply to the *Elite vs. ASI* Arbitration.

    b.  Subject to the ASI-Elite Subcontract, unfettered AAA Rule apply to the *Elite vs. ASI* Arbitration.

    c.  Because the amount at issue in the *Elite vs. ASI* Arbitration is in excess of $1 million, R-1(c) and L-1 of the AAA Rules require that the AAA's Procedures for Large, Complex Construction Disputes shall apply.

d.  Because the amount at issue in the *Elite vs. ASI* Arbitration is in excess of $3 million, L-3(a) of the AAA Rules requires that a panel of "three arbitrators shall hear and determine the case".

e.  The arbitrator candidates for the three-arbitrator panel shall be experienced Michigan construction lawyers.

f.  Under AAA Rules R-24, R-25, and L-4(c) through (h), ASI and Elite are entitled to conduct pre-arbitration discovery including the exchange of project documents and the deposition of witnesses, and there is no fixed limit to the discovery that may be undertaken by ASI and Elite.

g.  Per Section 15.04 and AAA Rule R-13, the Arbitration hearings are to be held at the office of the AAA "located closest to the site of the Project" (*i.e.*, Detroit, Michigan), or such other location near the Project site which is mutually agreeable to the parties and the arbitrator.

h.  Under AAA Rules R-23(b) and R-43, the timing of the *Elite vs. ASI* Arbitration hearing is to be "appropriate to achieve a fair, efficient, and economical resolution of the dispute" taking into consideration appropriate time to conduct discovery and to comply with the other scheduling requirements of the parties and the arbitrators.  Importantly, under R-23(b), R-31, R-33, R-34, and R-43, and subject to the schedule ordered by the Arbitrators, there is no fixed time by which discovery

18

must be completed or the arbitration hearings must be held.

i.  The *Elite vs. ASI* Arbitration shall be governed by Missouri law and/or Michigan law (as applicable to the respective claims).

j.  The *Elite vs. ASI* Arbitration shall **_not_** be held in California or Utah.

k.  Utah law shall **_not_** apply to the *Elite vs. ASI* Arbitration.

l.  The *Elite vs. ASI* Arbitration shall **_not_** be heard by Utah lawyer David Slaughter or any other single arbitrator.

m.  The *Elite vs. ASI* Arbitration shall **_not_** be subject to a 90-day discovery window or a limitation of only two depositions per party.

n.  The *Elite vs. ASI* Arbitration shall **_not_** be subject to a 120-day window from the filing of Big-D's Arbitration Demand or any other reduced window for a "fair, efficient, and economical resolution of the dispute".

o.  ASI shall not be subject to any term or condition in the Elite-Big-D Purchase Order.

59.    Morever, the relief requested by ASI is necessary and proper because any future award(s) on the merits in the underlying arbitrations would be defective and unenforceable for being inconsistent with the contractual mandates of the ASI-Elite Subcontract.

## COUNT II – REQUEST FOR INJUNCTION

60.    ASI incorporates by reference each and every previous allegation of

this Complaint as though fully set forth herein.

61.    Article 15 of the ASI-Elite Subcontract governs the arbitration of "all claims, disputes, disagreements or other matters in question between [ASI] and [Elite] arising out of, or related to, the Work, the Project the Subcontract or any alleged breach thereof" (see Section 15.2 of **Ex. 2**).

62.    Section 15.04 of the ASI-Elite Subcontract provides that "any arbitration between [ASI] and [Elite] shall be conducted in accordance with the Construction Industry Rules of the American Arbitration Association then in effect" (**Ex. 2**).

63.    Section 15.04 of the ASI-Elite Subcontract further provides that "such arbitration proceedings shall be administered by and conducted at the United States office of the American Arbitration Association located closest to the site of the Project" [*i.e.*, the Project is located in Detroit, Michigan] (**Ex. 2**).

64.    Section 15.04 of the ASI-Elite Subcontract further provides that "***upon the request of and at the sole discretion of [ASI]***, any arbitration between [ASI] and [Elite] may include, by consolidation or joinder or other appropriate motion, any additional person or entity not a party ot the Subcontract…" (**Ex. 2**, *emphasis added*).

65.    ASI has specifically **not** requested consolidation or joinder, and ASI has **not** given its consent to consolidation or joiner of the ASI/Elite Arbitration with

the Elite/Big-D Arbitration.

66.     Article 15 of the ASI-Elite Subcontract was triggered on August 26, 2025 when Elite filed its demand with the AAA for Arbitration against ASI, and when ASI filed its counterclaim with the AAA.

67.     On September 17, 2025, Elite made its motion in the AAA for consolidation and joinder of the *Elite vs. ASI* Arbitration and the *Big-D vs. Elite* Arbitration.   Subsequently, ASI and Big-D filed responses with the AAA in opposition to said motion.

68.     On October 23, 2025, the AAA's Rule 7 Arbitrator granted Elite's motion and issued an order for "consolidation", and the AAA's Rule 7 Arbitrator further ordered that the *Elite vs. ASI* Arbitration be consolidated into the *Big-D vs. Elite* Arbitration under the AAA Case No. 01-25-0003-7323 (**Ex. 5**).

69.     On November 4, 2025, ASI filed its motion for reconsideration and correction of the October 23rd Order for Consolidation.   Subsequently, Big-D concurred in ASI's motion for reconsideration.

70.     On November 26, 2025, the AAA's Rule 7 Arbitrator issued an order (i) denying ASI's motion for reconsideration, and (ii) further ordering that the matter proceed with a single arbitrator (rather than a three-arbitrator panel as required by AAA Rule L-3(a)) (**Ex. 6**).

71.     Rule L-3(a) of the AAA Construction Industry Arbitration Rules is a

mandatory rule which requires that a three-arbitrator panel be appointed in a case where a claim involves at least $3,000,000.00, unless the Parties agree otherwise. ASI does not agree to a single arbitrator.

72. The Parties have not agreed to use a single arbitrator; to the contrary, ASI and Elite understood that the matter would be heard by a three-arbitrator panel (see paragraph 6 of the September 18, 2025 Administrative Conference Summary from the AAA, **Ex. 3**). Therefore, the mandatory rule applies, and neither the Rule 7 Arbitrator, nor the AAA, have the discretion to decide whether a three-arbitrator panel should be appointed in the Arbitration.

73. Per MO. REV. STAT. § 435.350 (Missouri's codification of the Uniform Arbitration Act), a valid arbitration agreement is "a written agreement to submit any exiting controversy to arbitration or a provision in a written contract … to submit to arbitration any controversy thereafter arising between the parties". In this matter as between ASI and Elite, it cannot be disputed but that the Subcontract General Conditions Article 15 is the Parties' agreement to arbitrate (**Ex. 2**), and in contrast, as between ASI and Elite, there is no agreement to arbitrate on the terms set forth in the Elite-Big-D Purchase Agreement.

74. In this matter, ASI and Elite have an agreement to arbitrate at Subcontract General Conditions Article 15 (**Ex. 2**); ASI and Elite have no agreement to arbitrate on the terms set forth in the Elite-Big-D Purchase Agreement.

75.     Per MO. REV. STAT. § 435.360, "If an arbitration agreement provides a method of appointment of arbitrators, this method shall be followed".  And per Section 15.04 of the ASI-Elite Subcontract General Conditions, "any arbitration between [ASI] and [Elite] shall be conducted in accordance with the Construction Industry Rules of the American Arbitration" and Rule L-3(a) mandates this dispute be heard by a three-arbitrator panel.

76.     Section 4 of the Federal Arbitration Act permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  This Court has jurisdiction to apply and enforce the terms of the Federal Arbitration Act.

77.     Pursuant to 9 U.S.C. § 4, Plaintiff requests that this Honorable Court issue an order directing the AAA to administer the ASI-Elite Arbitration in accordance with the ASI-Elite Subcontract by appointing a three arbitrator panel as required by the AAA Construction Industry Arbitration Rules (and by otherwise adhering to the ASI-Elite arbitration agreement and the unfettered Construction Industry Rules of the AAA).

78.     Plaintiff requests that this Honorable Court issue an order directing the AAA to administer the ASI/Elite Arbitration in accordance with the Parties'

Subcontract including the appointment of a three-arbitrator panel as required by the AAA Construction Industry Arbitration Rules, in or near Detroit, Michigan, under Missouri and Michigan law, and without the imposition of any of the inconsistent and/or limiting terms of the Elite-Big-D Purchase Order.

79.    The foregoing allegations demonstrate a substantial likelihood of success on the merits of Plaintiff's entitlement to injunctive relief.

80.    Plaintiff will suffer irreparable harm if the requested injunction is not issued.

81.    The issuance of the requested injunction is in the public interest insofar as the public has an interest in ensuring that arbitration provisions within contracts are enforced as intended by the Parties by the arbitral organization they have selected to administer their arbitration proceeding under the applicable rules.

WHEREFORE, Plaintiff Automatic Systems, Inc. prays for relief as follows:

A.    A declaratory judgment as requested in Count I holding that ASI is entitled to the contractual rights of the arbitration provisions in its Subcontract with Elite (and the unfettered Construction Industry Rules of the AAA) and further holding that the ASI/Elite arbitration shall not be governed or administred by the inconsistent and limiting provisions of the Elite-Big-D Purchase Order.

B.    Injunctive relief as requested in Count II directing the AAA to administer the ASI/Elite Arbitration in accordance with the Parties' Subcontract and

the unfettered Construction Industry Rules of the AAA including the appointment of a three-arbitrator panel as required by the AAA Construction Industry Arbitration Rules, in or near Detroit, Michigan, under Missouri and Michigan law, and without the imposition of any of the inconsistent and/or limiting terms of the Elite-Big-D Purchase Order.

C.     Further injunctive relief restraining the AAA from proceeding under the *ultra vires* October 23, 2025 and November 26, 2025 orders of its Rule 7 Arbitrator, pending this Court's ruling on the merits of this Complaint.

Respectfully submitted,

DENEWETH, VITTIGLIO & SASSAK, P.C.

*/s/ Mark D. Sassak*

By:  _____
Mark D. Sassak (P53614)
Adel N. Nucho (P84139)
1175 W. Long Lake Rd., Ste. 202
Troy, MI 48098
(248) 290-0400 / fax: (248) 290-0415
msassak@dvs-law.com
anucho@dvs-law.com

**Attorneys for Plaintiff Automatic Systems, Inc.**

Date:  December 5, 2025

6215.2/pleadings/Complaint for Declaratory Relief